UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| NOE PUENTE, | ) No. CV 08-06703-VBK |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") provided

           legally sufficient reasons for rejecting the opinion of Drs. Nagelberg and Berman;

2.    Whether the ALJ provided legally sufficient reasons for rejecting the opinion of Dr. Silver; and

3.    Whether the ALJ properly evaluated Plaintiff's testimony.

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed.

**I**

**THE OPINIONS OF TREATING PHYSICIANS DRS. NAGELBERG AND BERMAN WERE NOT PROPERLY EVALUATED**

    **A.   Medical Evidence**.

Plaintiff's first issue is that the ALJ provided legally insufficient reasons to reject the opinions of Drs. Nagelberg and Berman. Dr. Nagelberg is a Diplomate of the American Board of Orthopedic Surgery and a Fellow of the American Academy of Orthopaedic Surgeons. (See AR at 292.) Dr. Nagelberg was Plaintiff's primary treating physician in 2003 and 2004, primarily as a result of an industrial injury which Plaintiff suffered in February 2002. (See AR at 316.) Dr. Berman, also a Diplomate of the American Board of Orthopedic Surgery, and a Fellow of the American Academy of Orthopaedic Surgeons, was the Agreed Medical Examiner ("AME") concerning Plaintiff's workers' compensation matter. (See AR at 312.)
Following an examination of Plaintiff on January 22, 2004, and a

2

subsequent review of extensive medical records, Dr. Berman wrote a report on April 12, 2004. (AR 312-324.)  Dr. Berman initially evaluated Plaintiff in October 2002.  As Plaintiff reported to Dr. Berman, he suffered trauma with injury on the job, and thereafter treated with Dr. Nagelberg.  He underwent surgery on his right shoulder on June 16, 2003, followed by physical therapy until November 2003.  He has had medications and injections, and acupuncture. Plaintiff reported that there was no benefit from the surgical treatment. (AR 313.)  Even after the surgery, Plaintiff continued to complain of right shoulder pain, with limited mobility and a cramping pain along with a feeling of weakness. (Id.)  Dr. Berman's examination revealed fifty percent of normal mobility in forward flexion, hyperextension, and right and left lateral deviation, with lower back pain.  Dr. Berman found decreased range of motion ("ROM") on the right shoulder. (AR 314.)  Impingement testing elicited right shoulder pain. (Id.)  Dr. Berman's review of Dr. Nagelberg's notes (see, infra) revealed that Plaintiff continued to complain of pain in his right shoulder area, neck and back, for a significant time after the surgery. (AR 315.)  Dr. Berman also noted continuous pain and discomfort in Plaintiff's shoulder area.  Plaintiff experienced increased pain upon lifting and carrying, and the pain was also aggravated by reaching, moving the arm backwards, or lifting the upper extremity above the shoulder level. (AR 318.)

    Dr. Berman concluded that Plaintiff's lumbar spine condition remained unchanged, and was not permanent and stationary with preclusions from heavy lifting and repetitive bending and stooping, as well as prolonged sitting, and prolonged ambulation.  With regard to the right shoulder area, Dr. Berman noted that Plaintiff has had post-

3

operative care and other treatment, including injections, but, "unfortunately, his condition has not changed much despite surgery. He continues to have mobility loss similar to that noted at the time of the initial evaluation." (AR at 321.)

Dr. Berman noted limited mobility and pain with mobility, with some residual weakness in the right shoulder and positive impingement testing. There is some grip strength loss on the right. On this basis, Dr. Berman recommended that Plaintiff avoid heavy work activities as well as activities at and above shoulder level. (AR 322.)

Dr. Nagelberg examined Plaintiff on April 3, 2004. At that time, Dr. Nagelberg concluded that Plaintiff had reached permanent and stationary status, and issued a report dated April 6, 2004, and a supplemental report on April 29, 2004. In that latter report (AR 291), Dr. Nagelberg concluded that Plaintiff has suffered permanent disability. In an August 25, 2004 report (AR 286-287), Dr. Nagelberg reviewed Dr. Berman's report following Dr. Berman's examination of Plaintiff on January 22, 2004 and indicated his agreement with Dr. Berman's opinions and recommendations. (AR 287.) As of August 25, 2004, Dr. Nagelberg found Plaintiff's condition to be permanent and stationary. (Id.)

Plaintiff received a consultative internal medicine evaluation ("CE") on September 16, 2005 from Dr. Klein, a board-certified internal medicine doctor. (AR 459-464.) Plaintiff complained of diabetes and right shoulder pain. (AR 459.) Plaintiff indicated that he had had shoulder surgery three years prior, and had difficulty raising his arm. (Id.) Dr. Klein's examination of the shoulder area revealed no joint swelling or erythema with range of motion of the

4

right shoulder revealing pain at 80/150 degrees, internal and external rotation normal with pain. (AR 462.) Dr. Klein opined that Plaintiff can lift and carry 50 pounds occasionally and 25 pounds frequently, can walk and stand for six hours in an eight-hour workday, with appropriate breaks, can sit for six hours in an eight-hour workday, but is limited in overhead work with the right shoulder to "occasionally" due to the previous surgery. (AR 463-464.)

### B. The ALJ's Opinion.

In his decision (AR 16-26), the ALJ essentially found that with regard to Plaintiff's physical impairments, Plaintiff's treating physicians (Dr. Nagelberg and Berman) had arrived at similar conclusions as those of Dr. Klein and the State Agency examining consultant. The ALJ interpreted all of these sources as being in agreement "that the [Plaintiff's] impairments limit him to medium exertion, subject to occasional overhead reaching with the right shoulder." (AR 21.) The ALJ found that after January 2004 Plaintiff repeatedly reported he was experiencing no pain. (AR 22.)[1]

The ALJ noted that Plaintiff's workers' compensation medical sources often opined that he was temporarily totally disabled. The ALJ noted, that, "Even if I assume that these assessments were meritorious, at some point, these reports ceased as of January 6, 2004, nearly 14 months prior to the [Plaintiff's] date of application." (AR 23.)

With regard to pain, the ALJ depreciated Plaintiff's credibility,

---

[1] Although the ALJ relied upon the findings of the CE, Dr. Klein, in Dr. Klein's September 16, 2005 report, he noted that one of Plaintiff's chief complaints was right shoulder pain. (AR 459.)

finding that treatment records are "replete with reports that he has been, in fact, experiencing no pain, whatsoever." (AR 24, exhibit citations omitted.)

Based on the foregoing analysis, the ALJ assessed that Plaintiff can perform medium work, with the ability to lift and carry 50 pounds occasionally, 25 pounds frequently, without further significant limitation except that he is limited to occasional overhead reaching with the right shoulder, and must avoid concentrated exposure to cold and vibrations. (AR 21.)

**C.  Analysis**.

In the hierarchy of medical opinions in Social Security cases, it is the treating physician who is, generally, accorded the most credibility. (See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).) Where the opinions of treating physicians are controverted by those of another medical source, based on independent clinical findings, the ALJ may only reject the opinion of the treating physician by citing specific and legitimate reasons based on substantial evidence in the record.  See Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004).

Here, the ALJ did not articulate his rejection of the opinions of the treating physicians, Drs. Nagelberg and Berman.  Rather, the ALJ found that these opinions were consistent with the opinions of the CE and of the State Agency physicians.  This is an incorrect factual conclusion.  Indeed, the opinions of the treating physicians, on a consistent basis, contained significantly greater restrictions on Plaintiff's functional ability than those of the lesser medical sources.  One such restriction concerns Plaintiff's ability to raise

6

his right arm above shoulder level.  The treating physicians found that he simply could not do this in a work environment, while the CE found that Plaintiff would be limited to only occasional lifting above shoulder level.[2]  Clearly, this is a significant distinction.  It is also noted that at the hearing before the ALJ (AR 517-544), a vocational expert ("VE") opined that if Plaintiff's testimony were taken as credible, he would not be able to do any of his past work. Similarly, he could not do light work.  The hypothetical question posed to the VE by Plaintiff's attorney at the hearing incorporated an inability to lift more than 10 pounds, stand for more than an hour, sit for perhaps half an hour, walk three to four blocks, and an inability to raise his hand above shoulder level or lift more than five pounds to a maximum at chest level. (AR 541.)  While, certainly, the hypothetical posed by the attorney contains more exertional restrictions than found by the ALJ, the inclusion in the hypothetical of an inability to raise his arm above shoulder level, resulting in a conclusion of disability, raises a warning flag as to the significance of this exertional limitation.  Simply put, the difference between only being occasionally able to lift above shoulder level and being unable to do so at all in a work environment is not a de minimis difference.

In and of itself, this error merits remand.  The Court will, however, briefly touch upon the ALJ's failure to deal with the preclusion by Dr. Berman, and agreed with by Dr. Nagelberg, against prolonged sitting and prolonged ambulation. (See AR at 321.)  While

---

[2] The CE is an internist, not an orthopedist. Consequently, his opinion on orthopedic issues is entitled to less value than the opinions of Drs. Nagelberg and Berman, who are orthopedists. See 20 C.F.R. §404.1527(d)(5).

these terms were delivered in the workers' compensation context, they may not be ignored in a Social Security case. (See Coria v. Heckler, 750 F.2d 245, 247 (3rd Cir. 1984); Booth v. Barnhart, 181 F.Supp.2d 1099 (C.D. Cal. 2002). Indeed, in his decision, the ALJ went to some lengths to "translate" Dr. Berman's preclusion against "heavy lifting" and "repetitive" bending and stooping into a Social Security equivalent, finding that under California workers' compensation law, a heavy lifting preclusion means, effectively, a loss of 50 percent of an individual's pre-injury work capacity, as does a preclusion from repetitive bending and stooping. (AR 22.) Thus, the ALJ determined that Dr. Berman's assessment "equates generally with a medium exertion for Social Security disability purposes, ..." (Id.) The ALJ did not, however, deal with Dr. Berman's preclusion against prolonged sitting and ambulation, although this was mentioned, in passing, in his decision. (Id.) The Commissioner's attempts to support the ALJ's decision by an analytical process which is not found in the ALJ's decision simply constitutes a post-hoc analysis. On remand, Dr. Berman's and Dr. Nagelberg's conclusions that Plaintiff is precluded from prolonged sitting and ambulation should be addressed appropriately, with the assistance of the VE.

**II**

**THE ALJ DID NOT PROVIDE LEGALLY SUFFICIENT REASONS**

**TO REJECT THE OPINION OF DR. SILVER, A RHEUMATOLOGIST**

As part of Plaintiff's workers' compensation case, Dr. Silver, who practices in internal medicine and rheumatology, performed an AME in rheumatology on Plaintiff on October 25, 2006. (AR 184-202.) After taking a history, Dr. Silver performed an extensive physical

examination which included a "tender point survey" including "control points." (AR 187-188.)  Dr. Silver concluded that Plaintiff's examination revealed the "diagnostic hallmarks of the presence of fibromyalgia." (AR 193.)  Dr. Silver opined that Plaintiff was temporarily totally disabled and would be extremely unlikely to be able to return to his previous employment. (AR 194.)

The ALJ rejected Dr. Silver's opinion for four reasons:

1. Because Dr. Silver is not a treating source;
2. Because he only examined Plaintiff once;
3. Because he did not review the entire record;
4. Because no other doctor offered the diagnosis that Dr. Silver offered.

(AR 19.)

As will be set forth in this decision, none of these reasons can be substantiated.

As to the first two, they can be quickly disposed of.  A medical source need not be a treating source in order to render a valid medical opinion.  This is a basic and fundamental principle in Social Security law, and the Court sees no reason to cite applicable regulations and cases which universally state this fact.  Equally troubling is the Commissioner's position in the JS which finds merit in the ALJ's rejection of Dr. Silver's assessment because Dr. Silver was not a treating source. (See JS at 19.)  Moreover, both the ALJ's and the Commissioner's present reliance upon a claim that Plaintiff did not report experiencing pain and injury is completely belied by the record.  As the Court noted, for example, during the consultative internal medicine examination (upon which the ALJ relied), which was

1  performed in 2005, Plaintiff reported experiencing pain.  Moreover,
2  the Commissioner again indulges in a post-hoc rationale, arguing that,
3  apparently, Dr. Silver's opinion does not document the presence of
4  fibromyalgia because it does not substantiate at least 11 out of 18
5  tender points necessary to support a diagnosis.  But this rationale
6  does not underlie the ALJ's rejection of Dr. Silver's opinion.  In
7  effect, the ALJ never got to the content of Dr. Silver's opinion
8  before rejecting it.  Moreover, the ALJ's last rationale, that no
9  other doctor offered the diagnosis offered by Dr. Silver, is
10 particularly unpersuasive, because Dr. Silver is a rheumatologist,
11 which is the medical speciality best suited to evaluate rheumatology.
12 (See Benecke v. Barnhart, 379 F.3d 587, 594, at n.4 ("Rheumatology is
13 the relevant speciality for fibromyalgia ... specialized knowledge may
14 be particularly important with respect to a disease such as
15 fibromyalgia that is poorly understood within much of the medical
16 community." (Citations omitted.))
17      On remand, Dr. Silver's opinion will be considered and credited.
18
19                                 **III**
20      **THE ALJ DID NOT PROPERLY EVALUATE PLAINTIFF'S CREDIBILITY**
21      In the decision, the ALJ depreciated Plaintiff's credibility due
22 to "the lack of psychiatric and medical treatment supporting these
23 claims and the inconsistencies in the [Plaintiff's] statements and
24 actions, ..." (AR 24.)
25      The ALJ's reasoning does not support a depreciation of
26 credibility.  First, the ALJ relies upon reports that allegedly
27 indicated Plaintiff has not been experiencing any pain.  But, as
28 Plaintiff's counsel correctly notes, most of the records cited to by

1 the ALJ concern Plaintiff's treatment for diabetes.  Further, as the
2 Court has indicated, the ALJ relied upon Dr. Klein's CE internal
3 medicine examination in 2005.  During that examination, Plaintiff
4 complained of suffering such pain.

5 　　　Also relevant to the subjective pain analysis is the fact that
6 after suffering a traumatic injury, Plaintiff underwent extensive
7 treatment, including surgery, acupuncture, physical therapy and
8 injections.  Still, he suffered pain in that area.  Dr. Nagelberg
9 recommended further surgical procedures, and fusion as to his lumbar
10 spine.  According to Dr. Nagelberg, "[Plaintiff] is apprehensive to
11 proceed with any of the above treatment."  Thus, the Court concludes
12 that Plaintiff underwent significant and extensive treatment in an
13 attempt to alleviate his pain, but it was unsuccessful.  He was found
14 permanent and stationary, which, in workers' compensation terms, means
15 that after the employee has reached maximum medical improvement, or
16 his condition has been stationary for a reasonable period of time, he
17 is considered permanent and stationary. (See Ganqwish v. Workers'
18 Comp. Appeals Bd., 89 Cal.App.4th 1284, 1289 n.7 (2001)(quoting Cal.
19 Code Regs. Tit. 8, section 10152).)

20 　　　The ALJ faults Plaintiff for not receiving additional medical
21 treatment, but fails to account for the apparent fact that Plaintiff,
22 during that time, did not have appropriate medical insurance to cover
23 additional treatment.  In addition, Plaintiff had been found by his
24 treating physicians to be permanent and stationary.  He had reached
25 maximum medical improvement.  This, combined with his financial
26 inability to receive further medical care, satisfactorily explains the
27 absence of treatment during this time period.  This is not a reason to
28 discount credibility. (See Gamble v. Chater, 68 F.3d 319, 321 (9th Cir.

11

1995).)

Finally, the ALJ's interpretation of Plaintiff's MMPI testing as producing an invalid elevated score, and finding that Plaintiff is an individual who "over endorsed, if not exaggerated, symptoms" is not supported by the report of the psychologists who administered the test, Drs. Halote and Burke. (AR 244-273.)  Indeed, as to the MMPI-2 administered to Plaintiff, while the results were considered invalid, the psychologists stated that, "The cause of this elevation is unclear.  It may be due to [Plaintiff's] attempt to minimize his psychological symptoms and appear better adjusted than he is." (AR 259.)  This was not a definitive finding of exaggeration, and certainly not one of malingering, and it does not constitute a proper basis for depreciation of Plaintiff's credibility.

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**


DATED: July 15, 2009                    /s/
                                VICTOR B. KENTON
                                UNITED STATES MAGISTRATE JUDGE